WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-17-01410-PHX-DLR |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| Darrell E. McCoy, | |
| Defendant. | |

Before the Court is Defendant Darrell E. McCoy's post-trial motion. (Doc. 122.) Defendant's post-trial motion is styled as a motion for judgment notwithstanding the verdict, a motion to vacate the judgment, and a motion to dismiss multiplicitous counts. (*Id.*) The motion is fully briefed. For the reasons stated below, Defendant's motion is denied.

**I. Background**

In 2016, Defendant, a seventeen-year correctional officer at the Federal Correctional Institution ("FCI") in Phoenix, Arizona, was responsible for overseeing inmate work crews. Defendant's crews were responsible for the prison's repairs, maintenance and landscaping. Because of staffing shortages, Defendant found himself working alone with the female inmates, managing two shops with little oversight or assistance from other correctional officers.

In approximately September 2016, an inmate under his supervision, S.S., the "lead"

inmate with whom he had regular daily contact, unexpectedly hugged Defendant from behind. Rather than treat it as a disciplinary violation, as he admittedly should have, Defendant became romantically involved. According to Defendant:

> I just got emotionally attached. And it was kind of a romantic, um, fantasy. Um, I swear I had no intentions on it going any farther than that. And with each time something would happen, I would realize that if I were to stop it now, she may get upset and, you know, turn me in.

(Doc. 131-1 at 9.)

During the next two to three months, while Defendant and S.S. continued working together they often hugged and kissed.[1] Defendant, knew that sexual contact by a correctional officer with an inmate is illegal and claims that he tried to avoid it. However, S.S. attempted to take the relationship further than just hugging and kissing. She began touching Defendant and caused Defendant to touch her, by grabbing his hand and placing it on her body in areas that are defined by statute as sexual contact. At trial, S.S. testified that Defendant told her to stop and that he pulled away because "he [didn't] want to get in trouble," but she did not stop, testifying, "I guess you can say I like a challenge." (Doc. 117 at 54.)

Defendant was charged by way of a superseding indictment with five counts of abusive sexual contact of a ward in violation of 18 U.S.C. §§ 2244(a)(4) and 2246. (Doc. 48.) The superseding indictment alleged that "on or about September 29, 2016, through December 15, 2016," Defendant had sexual contact with a female inmate in his custodial authority in five locations in FCI. (*Id.*) The superseding indictment identified a location for each count as follows:

| Count | Location |
| --- | --- |
| 1 | Within a vehicle on FCI-Phoenix |
| 2 | In or near garage on FCI-Phoenix |

---

[1] Defendant was charged with violating 18 U.S.C. § 2246, which does not define hugging and kissing as sexual contact.

- 2 -

| | |
|---|---|
| 3 | In or near maintenance building (a/k/a workshop) on FCI-Phoenix |
| 4 | In or near office within maintenance building (a/k/da workshop) on FCI- Phoenix |
| 5 | In or near area referred to as "bone yard" on FCI-Phoenix |

Following a three-day trial, the Court granted Defendant's motion for judgment of acquittal under Federal Rule of Criminal Procedure Rule 29 as to Count 2, and dismissed Count 4, finding it multiplicitous.[2] (Doc. 100.) The jury deliberated on Counts 1, 3 and 5, and found Defendant guilty of Counts 1 and 3 and not guilty of Count 5.

## II. Motion for Judgment of Acquittal

### A. Legal Standard

Defendant's motion for judgment of acquittal was brought pursuant Rule 29(c)(1). A challenge to the sufficiency of the evidence under Rule 29(c) requires the court to view the evidence in the light most favorable to the prosecution and ask if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hursh*, 217 F.3d 761, 767 (9th Cir. 2000). "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference supports the government's case, or where there is a total failure of proof of a requisite element." *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir. 2015) (internal quotation and citation omitted). The government is not required to rebut all reasonable interpretations of the evidence that would point to the defendant's innocence or rule out every hypothesis except guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

---

[2] The Court dismissed Count 4 as multiplicitous because in proving that Defendant had contact "in or near office within maintenance building" the prosecution would necessarily establish that Defendant had contact "in or near maintenance building." The Court's ruling limited its consideration to the face of the indictment.

**B. Discussion**

The crime of abusive sexual contact of a ward requires proof of, among other things, sexual contact. Sexual contact is defined as "the *intentional* touching . . . of the genitalia, breast, inner thigh, or buttocks of an person with the *intention* to . . . arouse or gratify sexual desire of any person." 18 U.S.C. § 2246(3) (emphasis added).

Defendant does not dispute the existence of an inappropriate relationship with the victim, an inmate. Nor does he dispute the evidence of touching, much of which occurred in locations other than the locations identified in Counts 1 and 3 of the superseding indictment. For purposes of this motion, however, it is only evidence of touching that occurred in the locations identified in Counts 1 and 3 that are at issue.

1. *Count 1: Sexual Contact Within the Vehicle*

Defendant argues that the evidence does not establish that: (1) the touching in the vehicle was of a statutory body part; (2) Defendant intended the touching to occur; and (3) the touching was done with the intent to arouse or gratify sexual desire of any person. (Doc. 122 at 9-10.) Specifically, Defendant argues that S.S. initiated the contact and Defendant immediately pulled his hand away, and there is no evidence establishing that when Defendant touched S.S.'s thigh that it was her inner thigh. (*Id.*)

Although Defendant's statement and S.S.'s testimony differed slightly, they were generally consistent. That is, both stated that while in the truck S.S. pulled Defendant's hand to her crotch area and he pulled it away. S.S. testified that it occurred on only one occasion, and that she put the Defendant's hand on her thigh "[c]loser to my, um, pubic area." (Doc. 117 at 51-52.) Whereas Defendant indicated in his statement to investigators that S.S. pulled his hand to her crotch area 2-3 times. (Doc. 131-1 at 44.) Defendant also stated, "I would squeeze the thigh and pull away because we're driving and someone's going to see." (*Id.* at 42.)

In addition to the direct evidence, the testimony of S.S. and Defendant's statement, the prosecution introduced circumstantial evidence of Defendant's intent. For instance, the repetitive nature of the touching; Defendant's note to S.S. describing romantic sexual

activity; text message exchanges for a four-month period after S.S.'s release; and Defendant's denial of the underlying facts when first confronted by investigators.

The question of whether Defendant touched S.S.'s inner thigh and what his intent was when he touched it is a question of fact. The jury was properly instructed that the definition of sexual contact requires intentional touching for the intended purpose of arousing or gratifying the sexual desire of any person. (Doc. 106 at 10.) In reaching its verdict the jury made a factual determination that in the vehicle, when S.S. pulled and placed the Defendant's hand to her thigh, close to her pubic area, Defendant intended to touch her inner thigh and intended to do so to arouse or gratify sexual desire.

Viewing the testimony of S.S., Defendant's admissions, and the circumstantial evidence discussed above in the light most favorable to the prosecution, the Court finds that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Because Defendant could have prevented S.S. from pulling his hand to her thigh, the repetitive nature of her pulling his hand to her thigh, and that Defendant squeezed the thigh rather than immediately pulling away, a rational trier of fact could have found that although S.S. pulled Defendants hand to her thigh near her pubic area, he willingly participated, intentionally touching her inner thigh to arouse or gratify his or S.S.'s sexual desire.

2. *Count 3: Sexual Contact In or Near the Maintenance Building*

Defendant argues that the evidence of sexual contact in the maintenance building, which included an office and shop, amounted to nothing more than a single playful butt tap, not meant to arouse or gratify sexual desire of any person. (Doc. 122 at 11.)

The sole evidence of Defendant touching S.S's buttocks in the maintenance building is the testimony of S.S. This testimony was inconsistent. For example:

Q: [When you were kissing and touching] were his hands around you?

A: Yes.

Q: Were his hands on your buttocks?

A: Not all the time.

| | |
|---|---|
| 1 | Q: Sometimes? |
| 2 | A: Sometimes. |
| 3 | Q: There were occasions where his hands were on your buttocks while you were in |
| 4 | th[e] shop? |
| 5 | A: No. |
| 6 | (Doc. 117 at 40-41.) |
| 7 | Q: And when you were kissing and hugging, you were embracing; is that right? |
| 8 | A: Yeah. |
| 9 | Q: Okay. And his hands were around you? |
| 10 | A: No, because when it would happen, he would be sitting down and I would come |
| 11 | from behind. |
| 12 | (*Id.* at 43.) |
| 13 | Q: You mentioned that he also touched your buttocks; is that right? |
| 14 | A: Yes. |
| 15 | Q: Okay. Did that happen in the office? |
| 16 | A: Yeah. |
| 17 | Q: It did happen in the office? |
| 18 | A: Yeah, but it was more like a tap. |
| 19 | (*Id.* at 44.) |
| 20 | Q: When Mr. McCoy touched your buttocks, did that happen most often in the |
| 21 | shop? |
| 22 | A: No, ma'am. |
| 23 | Q: Where did it happen most often? |
| 24 | A: Out in the shed. In the shed, in the boneyard, random places. I don't know. I |
| 25 | can't really remember it all. |
| 26 | (*Id.* at 46.) |
| 27 | Q: You said earlier that you were joking and laughing on the times where he tapped |
| 28 | your - - or touched your butt; is that right? |

A: I said that we were joking and we were laughing.

(*Id.* at 53.)

Despite these apparent inconsistencies, at a minimum, S.S.'s testimony established at least one "butt tap" in the office of the maintenance building. Defendant recognizes as much in his motion. When determining Defendant's intent, the jury is not bound by the interpretation of S.S. that it was just a playful touch nor is it limited in its consideration of the circumstantial evidence. Thus, when viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found beyond a reasonable doubt that Defendant's touching of S.S.'s buttocks in the office was done with the intent to arouse or gratify sexual desire.[3]

**III. Motion for New Trial**

**A. Legal Standard**

Defendant's motion for new trial was brought pursuant to Fed. R. Crim P. 33(a), which states: "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(a) gives the trial court much broader power to grant a new trial than its power to grant a motion for a judgment of acquittal under Rule 29. *United States v. Kellington*, 217 F. 3d 1084, 1095 (9th Cir. 2000). The motion for new trial does not require the district court to view the evidence in the light most favorable to the prosecution but allows the district court to weigh the evidence and evaluate the credibility of the witnesses. *Id*. "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issue for determination by another jury." *Kellington,* 217 F. 3d at 1097.

---

[3] In his reply brief, Defendant includes a picture of Jerry Jones, the owner of the National Football League's Dallas Cowboys, tapping the buttocks of quarterback Tony Romo. Defendant argues "[i]f tapping the buttocks of another constitutes abusive, sexual conduct, then several professional sports owners, coaches, and players should be rounded up and charged with abusive sexual contact." (Doc. 128 at 8.) This hail-mary argument misses the mark, falling incomplete. The statute at issue focuses on preventing prison guards from engaging in sexual touching with inmates; tapping the buttocks in the context of athletics, professional or otherwise, is inapposite.

## B. Discussion

Defendant's motion for new trial, like his motion for acquittal, argues the lack of evidence to sustain the verdict. Defendant argues that the prosecution failed to prove that he "intentionally touched S.S. in any of the places on her body listed in the statute" and that it "failed to prove that any of that touching occurred with [Defendant's] intent to arouse or gratify the sexual desire of a person." (Doc. 22 at 12.)

The Court recognizes that its power to grant a motion for new trial is much broader than its power to grant a motion for judgment of acquittal and that it may weigh the evidence and in so doing evaluate the credibility of witness, *Kellington*, 217 F. 3d at 1095, but the facts were undisputed. There was one witness to the events in question, S.S. The only other evidence of the events was the statement taken from Defendant. There was no disputed testimony. The dispute goes only to the interpretation of the evidence and whether it was sufficient to establish the elements of the offense.

The Court has weighed the evidence and the credibility of the witnesses, and the Court does not find that the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred.

## IV. Motion to Dismiss Multiplicitous Counts[4]

### A. Legal Standard

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Under the Double Jeopardy Clause, "multiple punishments for the same offense" are prohibited. *Whalen v. United States*, 445 U.S. 684, 688 (1980); *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008). "An indictment is multiplicitous when it charges multiple counts for a single offense, thereby resulting in two penalties for one crime and raising double jeopardy concerns." *United States v Mancuso*, 718 F.3d 780, 791 (9th Cir. 2013).

---

[4] Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) requires a defendant to raise a multiplicity objection to an indictment "by pretrial motion if the basis for the motion is then reasonably available." Defendant did so here, and the Court denied the motion. (Docs. 43, 61.) Defendant's counsel orally re-raised the motion after trial and the Court dismissed Count 4 as multiplicitous. Now, Defendant raises this argument yet again in his post-trial motion.

"Stating the rule against multiplicity is a relatively simple proposition; discerning the proper judicial test for implementing the rule is, however, more difficult." *United States v. Christner*, 66 F.3d 922, 927 (8th Cir. 1995). Two distinct tests have emerged in determining whether Congress intended to allow for cumulative punishments of statutory violations. Where a challenged indictment charges the same conduct under different statutes, courts must apply the test detailed in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), and determine if the statutes have the same elements. *See United States v. Zalapa*, 509 F.3d 1060, 1062 n.1 (9th Cir. 2007). If, however, the challenged indictment charges the same conduct under the same statute, courts are instead tasked with determining what Congress intended to be an "allowable unit of prosecution." *Id.* at 1062. Courts need not apply either of the aforementioned tests, however, where each count brought against defendant is for distinct conduct. *See Powell v. Ryan*, No. 14-CV-2043-TUC-RM, 2016 WL 4470366, at *5 (D. Ariz. Aug. 25, 2016). In considering a motion to dismiss, "the Court is limited to the face of the indictment and must accept the facts alleged in that indictment as true." *United States v. Nosal*, No. 08-CR-237-MHP, 2009 WL 981336, 2009 WL 981336, at *2 (N.D. Cal. April 13, 2009) (citing *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1955)).

**B. Discussion**

Here, Defendant asks the Court to dismiss Count 1 or Count 3 of the superseding indictment as multiplicitous because the conduct that the jury found to have occurred in the vehicle, "could easily have also been based on the conduct 'in or near' the maintenance building." (Doc. 143 at 5.) In determining whether the indictment contains multipliticous charges, however, the Court is limited to the face of the indictment and does not consider the evidence presented at trial. Count 1 concerns conduct that occurred in the vehicle, while Count 3 concerns conduct that occurred in or near the maintenance building. Each count constitutes an entirely separate crime that could be proven without necessarily establishing the other. *See Powell v. Ryan*, No. 14-CV-2043-TUC-RM, 2016 WL 4470366, at *5 (D. Ariz. Aug. 25, 2016); *Loeblein v. Dormire*, 229 F.3d 724, 727 (8th Cir.

2000) (holding that an indictment charging separate counts for each sexual assault was not multiplicitous because each occurrence was a separate act). Therefore, Counts 1 and 3 are not multiplicitous.

**IT IS ORDERED** that Defendant's Motion for Judgment Notwithstanding the Verdict (Doc. 122), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Vacate the Judgment (Doc. 122) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Multiplicitous Counts (Doc. 122) is **DENIED**.

Dated this 24th day of January, 2019.

Douglas L. Rayes
United States District Judge